# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-059

Filing Date: April 27, 2011

Docket No. 29,427

EVE RANDLES,

      Plaintiff-Appellant,

v.

ALLEGRA HANSON and KCB, LLC,

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Ted Baca, District Judge

Cuddy & McCarthy, LLP
Daniel J. Behles
Albuquerque, NM

for Appellant

Allegra Hanson, Attorney At Law
Allegra Hanson
Albuquerque, NM

Pro Se Appellee

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Jocelyn Drennan
Albuquerque, NM

for Appellee KCB, LLC

## OPINION

**FRY, Judge.**

**{1}** In this appeal, we must determine the legal and equitable remedies available to performing and contributing coguarantors against a principal debtor who has defaulted on a loan. Adopting the approach of the Restatement (Third) of Suretyship and Guaranty, we hold that a coguarantor who has fulfilled a duty of contribution to a performing coguarantor is entitled to recourse against a principal debtor as though the contributing coguarantor had performed the guaranty to the same extent as his or her contribution. Restatement (Third) of Suretyship & Guaranty § 58 (1996). A contributing coguarantor has the right to seek reimbursement, restitution, or subrogation against a defaulting principal debtor to the extent of his or her contribution. *Id.* cmts. b, c, d, at 248-50. We further conclude that a performing coguarantor's claim against a principal debtor is reduced to the extent that he/she receives contribution from another coguarantor. *Id.* cmt. e, at 250. Applying this holding to the facts of this case, we reverse the district court's grant of summary judgment in favor of Defendant KCB, LLC (KCB or "performing coguarantor") and remand with instructions.

## BACKGROUND

**{2}** This case arose out of a $500,000 loan issued by Compass Bank to New Mexico Motor Speedway, Inc. (Speedway) in October 2000. The loan was secured through the execution of personal guaranties by four shareholders of Speedway—Steven Kadner, Richard Chaves, and Jerome Beckes, who are the individual members of Defendant KCB, and Plaintiff Eve Randles—and by Michael Jones, Speedway's president at the time.

**{3}** Two days after the promissory note for the loan was executed, the parties entered into two written agreements that are relevant to the present dispute. The first agreement (Memorandum Agreement) was executed between all five guarantors and essentially allocated liability among the guarantors in the event of a default by Speedway. In this agreement, the guarantors acknowledged that they were "jointly and severally liable for all unpaid amounts" and, therefore, if Speedway defaulted, the agreement provided that each guarantor would be responsible for paying "one-fifth (1/5) of all amounts owed" within twenty days of the date of any written demand by the bank for payment.

**{4}** The second agreement (Compensation Agreement) was executed between Speedway and all five guarantors. This agreement memorialized an earlier offer from Speedway to pay "each guarantor $1.00 for each dollar guaranteed" as compensation for the "significant risk" each guarantor had taken in personally guaranteeing the loan. Accordingly, the agreement provided that Speedway would pay approximately $500,000 to the guarantors as compensation for their guaranties and that this amount would be distributed in equal percentages among the five guarantors.

## A. Speedway's Default and Subsequent Bankruptcy

**{5}** In 2003, Speedway defaulted on the loan, and the bank demanded payment from the guarantors. Randles and Speedway's president, Jones, refused to pay, and the remaining three guarantors ultimately paid the entire $500,000 plus interest due on the note. These three individuals, as performing guarantors, then formed KCB and assigned their rights under the written agreements to KCB. Shortly thereafter, KCB sued Randles and Jones to

recover their pro-rata shares of the amount KCB had paid to the bank. In that action, KCB obtained a judgment against Randles for her pro-rata share of the principal in the amount of $113,406, plus attorney fees, which Randles paid to KCB in June 2005.

{6}      KCB also sought reimbursement from Speedway for its default. This effort stalled in June 2005 when Speedway filed for Chapter 11 bankruptcy. During the bankruptcy proceedings, KCB filed two claims against Speedway totaling one million dollars. The first claim was for $500,000—the amount KCB claimed it had paid to the bank upon Speedway's default (which we refer to as the "principal amount" or "underlying obligation"). The second claim was for an additional $500,000—the compensation KCB claimed it was due under the terms of the Compensation Agreement ("premium amount"). Subsequently, as part of its Chapter 11 reorganization efforts, Speedway agreed to pay KCB's claims and proposed a payment of one million dollars to cover both the principal and the premium amounts. At this point, Randles filed a conditional objection in bankruptcy court for $200,000 of Speedway's proposed payout to KCB, arguing that she was entitled to this amount because half ($100,000) represented her pro-rata share of the principal she had previously paid to KCB in the earlier judgment and the other half ($100,000) was her portion of the premium. Without addressing the merits of this dispute and in order to allow the bankruptcy proceedings to conclude, the parties agreed to a stipulated order that the disputed $200,000 would be placed in the trust account for KCB's attorney, Defendant Allegra Hanson, pending resolution of the parties' dispute as to the amount. The bankruptcy court's order disbursed the remaining $800,000 directly to KCB and stated that Speedway was deemed to have fulfilled its obligations to Randles and KCB regardless of the outcome of their dispute as to the $200,000. The parties then asked the bankruptcy court to decide the merits of their dispute as to the $200,000, but the court determined that it no longer had subject matter jurisdiction to do so. That set the stage for the current lawsuit.

## B.      Present Dispute

{7}      In the proceedings below, which gave rise to this appeal, Randles filed an action in district court against KCB, arguing that she was entitled to the $200,000. She argued that half of this sum represented reimbursement from Speedway for her payment of the judgment to KCB for her pro-rata share of the principal and that the other half was her share of the premium. The parties filed cross-motions for summary judgment, with each party arguing that it was entitled to the $200,000 as a matter of law and equity. After a hearing on both motions, the district court denied Randles' motion and granted KCB's cross-motion for summary judgment. The court concluded that Randles was not entitled to the $100,000 principal or the $100,000 premium amounts as a matter of both law and equity. This appeal followed.

## DISCUSSION

{8}      On appeal, Randles argues that the district court erroneously denied her motion for summary judgment as to both the principal and the premium amounts. We address the parties' arguments with respect to each amount in turn.

## A.      Standard of Review

3

**{9}** "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.* In addition, "[w]here cross-motions for summary judgment are presented on the basis of a common legal issue, this Court may reverse both the grant of one party's motion and the denial of the opposing party's cross-motion and award judgment on the cross-motion." *Grisham v. Allstate Ins. Co.*, 1999-NMCA-153, ¶ 2, 128 N.M. 340, 992 P.2d 891.

### B. Whether Randles is Entitled to the $100,000 Principal

**{10}** With regard to the $100,000 principal amount, Randles argues that her previous payment of the judgment to KCB for her pro-rata share of the principal entitled her to seek recourse from Speedway for that payment. Specifically, Randles contends that her contribution to KCB placed her in the position "as if she ha[d] participated with them originally in paying Compass Bank" and, therefore, she became entitled to recover the $100,000 principal from Speedway under three different theories: assignment, subrogation, and what she terms as general "equitable principles . . . [of] unjust enrichment and double recovery." In response, KCB argues that Randles is precluded from any recovery because she breached the Memorandum Agreement by refusing to pay when the bank demanded payment following Speedway's default. KCB further claims that the theories of assignment and subrogation are inapplicable under the facts of this case and that the doctrine of unclean hands precludes any recovery on equitable grounds.

**{11}** On this issue, the parties contend that there are no material facts in dispute. The parties agree that Randles breached the Memorandum Agreement by not paying her share of the principal within twenty days of Speedway's default; that KCB then sued Randles for her share of the principal after it had paid the entire loan principal to the bank; and that Randles paid $113,406, plus attorney fees, to KCB in satisfaction of the ensuing judgment KCB obtained against her.

**{12}** We diverge briefly to clarify that although the previous lawsuit filed by KCB against Randles was termed a "complaint for collection of debt" without using the term "contribution," we consider that lawsuit essentially to be an action for contribution.[1] *See*

---

[1]Although only a few cases in New Mexico have touched on the right of contribution between coguarantors, *see FDIC v. Hiatt*, 117 N.M. 461, 469, 872 P.2d 879, 887 (1994) (Montgomery, C.J., dissenting); *First Nat'l Bank in Albuquerque v. Energy Equities Inc.,* 91 N.M. 11, 17, 569 P.2d 421, 427 (Ct. App. 1977), the principle is well-established in other jurisdictions. *See, e.g.*, *Lestorti v. DeLeo*, 4 A.3d 269, 275-77 (Conn. 2010); *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 772-73 (Iowa 2009); *Rodehorst v. Gartner*, 669 N.W.2d 679, 686-87 (Neb. 2003); *Albrecht v. Walter*, 1997 ND 238, ¶ 10, 572 N.W.2d 809, 812; *Katz v. Prete*, 459 A.2d 81, 85 (R.I. 1983); *Gardner v. Bean*, 677 P.2d 1116, 1118

*Black's Law Dictionary* 378 (9th ed. 2009) (defining "contribution" as "[t]he right that gives one of several persons who are liable on a common debt the ability to recover proportionately from each of the others when that one person discharges the debt for the benefit of all"). We think that Randles' payment of the judgment is economically equivalent to the result that would be obtained in an action for contribution against her. For reasons that become apparent in our discussion later, we therefore re-cast the facts mentioned above in the context of an action for contribution as follows. After KCB paid Speedway's obligation to the bank, it had a right to seek contribution from Randles for her pro-rata share of the principal. Subsequently, when Randles paid the $113,406 judgment to KCB, we consider her to have fulfilled a duty of contribution to KCB.

**{13}** Based on our review of the record, we agree with the parties' contention that there are no disputed material facts on this issue. Thus, resolution of the parties' dispute over the $100,000 principal depends solely on determining whether Randles is entitled to the $100,000 principal amount paid by Speedway by virtue of her previous contribution to KCB. Stated differently, we must decide whether a contributing coguarantor—i.e., a guarantor who has paid its pro-rata share of the underlying obligation through an action for contribution brought by a fellow coguarantor—is entitled to seek recovery from the principal debtor to the extent of its contribution. We apply de novo review to this legal question.

**{14}** This is a novel issue in New Mexico as we have not found any New Mexico case to have addressed this precise issue, nor have the parties directed us to any such authority. In the absence of any relevant New Mexico authority, we turn to the Restatement (Third) of Suretyship and Guaranty for guidance. This Court has previously stated that we look to the Restatement for "authoritative guidance on the common law" of guaranties. *Venaglia v. Kropinak*, 1998-NMCA-043, ¶ 12, 125 N.M. 25, 956 P.2d 824.

**{15}** For purposes of clarity, we begin our analysis by setting forth the relationship between the parties in terms of the Restatement because these terms differ from those employed by the parties in their briefing. The Restatement avoids the use of the term "guarantor" and instead refers to a guarantor as a "secondary obligor," who is liable to the "obligee" (or creditor) for the underlying obligation in the event of a default by the principal obligor (or principal debtor). *See* Restatement (Third) of Suretyship & Guaranty § 1 cmt. d, at 7 (1996). The obligation of a secondary obligor to pay the underlying obligation is considered the secondary obligation. *Id.* Additionally, in cases where there are multiple secondary obligors for the same underlying obligation, the relationship between them is that

---

(Utah 1984). Additionally, the Restatement (Third) of Suretyship and Guaranty has recognized the right of one cosurety to seek contribution from another cosurety. *See* § 55(2), at 236 (1996); *see also* Peter A. Alces, *The Law of Suretyship & Guaranty* § 5.03[2], at 5-13 (1996) (describing the Restatement's approach on contribution by stating that "when one cosurety has paid the obligee more than that cosurety's proportionate share of the underlying obligation, the cosurety who has overpaid will have a claim against the other cosurety(ies) to recover the amount he paid in excess of his proportionate share. The idea is that each cosurety should ultimately be out of pocket only in the amount to which he agreed").

5

of a cosuretyship or a subsuretyship.  Restatement (Third) of Suretyship & Guaranty § 53, at 227 (1996).

**{16}**    Applying these terms to the parties in this case, Randles and KCB were secondary obligors with joint and several liability to Compass Bank, the obligee, for the $500,000 underlying obligation in the event of a default by Speedway, the principal obligor.  Also, Randles and KCB were cosureties because they expressly agreed in the Memorandum Agreement to be jointly and severally liable for the underlying obligation.  *See id.* § 55 cmt. a, at 236 (stating that individuals are cosureties when "the relationship between them is such that they should share the cost of performance of their secondary obligations").  Moreover, based on the procedural history of this case, KCB is considered a performing cosurety because it performed under the guaranty when the principal obligor defaulted while Randles is a contributing cosurety because she acted only through the previous action for contribution.  *See id.* § 55 cmts. a-e, at 236-38 (describing performing cosurety's role and right to seek contribution); § 58 cmts. a-b, e, at 248-50 (describing contributing cosurety).

**{17}**    Based on our review of the Restatement, we conclude that one section in particular is on point for resolving the issue before this Court because it covers the rights of a contributing cosurety with respect to a principal obligor who has defaulted.  Section 58 of the Restatement provides two general rules directly applicable here that govern the rights of performing and contributing co-sureties in seeking recovery against a principal obligor in the event of a default.  First, the section provides that "[a] cosurety who satisfies a duty of contribution owed to another cosurety . . . is entitled to recourse against the principal obligor as though that cosurety had performed its secondary obligation to the same extent."  *Id.* § 58(1), at 248.  Second, it provides that "[t]he claim against the principal obligor of a cosurety who performs its secondary obligation . . . is reduced to the extent that the cosurety receives contribution from another cosurety."  *Id.* § 58(2), at 248; *see id.* cmt. e, at 250 ("When a cosurety performs its secondary obligation, the magnitude of its claim against the principal obligor is determined by the magnitude of its performance pursuant to the secondary obligation.  If the performing cosurety later recovers from another cosurety under a right of contribution, however, the performing cosurety no longer requires the original remedy against the principal obligor in order to be made whole.").  A leading treatise on suretyship and guaranty offers an illustration of these rules in operation together that is directly on point:

> If S1, S2, and S3 are each liable for $2,500 of a $7,500 obligation of P to O, when S1 pays O the full $7,500, S1 may recover that amount from P.  Once S1 recovers $2,500 in contribution from S2, S2 will be able to recover that amount, $2,500, from P.  Upon that payment by S2 to S1, S1's claim against P is reduced by $2,500.

Alces, *supra*, § 5.03[2], at 5-14.

**{18}**    The general rationale underlying Section 58 is to place the contributing cosurety in the same position as the performing cosurety when it comes to seeking recovery from the principal obligor.  Restatement (Third) of Suretyship & Guaranty § 58 cmt. a, at 248 ("When one cosurety performs beyond its contributive share and receives contribution from another

6

cosurety, the cosureties are in the same position as if the contributing cosurety had performed the secondary obligation to the same extent as its contribution to the performing cosurety."); *id.* cmt. d, at 249 ("If [a] cosurety fulfills a duty of contribution to the [performing] cosurety, the result is economically equivalent to a situation in which the two cosureties, by each performing to the extent of their contributive shares, discharge the underlying obligation.").

{19}    We adopt the approach of Section 58 of the Restatement for determining the rights of contributing and performing cosureties against a principal obligor who has defaulted on a loan.  Thus, we describe the theories of recovery provided in Section 58 by which a contributing cosurety can seek recovery against a principal obligor: (1) reimbursement, which is based on "notions of an implied contract on the part of the principal obligor to make [a contributing] secondary obligor whole for the costs of its performance"; (2) restitution, which is based on the principle of unjust enrichment; and (3) subrogation. *See id.* cmts. b, c, d, at 248-50.  The Restatement defines reimbursement as the duty of a principal obligor who is charged with notice of a cosurety's secondary obligation to "reimburse [a] secondary obligor for [the] cost of fulfilling its duty of contribution." *Id.* cmt. b, at 249.  Restitution differs from reimbursement in that it covers situations where the principal obligor is not charged with notice of the secondary obligation. *Id.* cmt. c, at 249.  Finally, subrogation is essentially an equitable assignment of the obligee's rights to the guarantor when it comes to seeking recourse against a principal obligor. *See* Dan B. Dobbs, *Law of Remedies* § 4.3(4), at 404 (2d ed. 1993) ("Having paid the defendant's creditor, the plaintiff stands in the creditor's shoes, becomes the real party in interest, and is entitled to exercise all the remedies which the creditor possessed against the defendant." (footnote omitted) (internal quotation marks and citation omitted)).  In this context, once a cosurety has fulfilled a duty of contribution, the Restatement provides that the cosurety "is subrogated to the rights of the obligee against the principal obligor to the same extent as if that cosurety had paid the same funds to the obligee." Restatement (Third) of Suretyship & Guaranty § 58 cmt. d, at 249-50.  Under any of these three theories, a contributing cosurety is entitled to recourse from the principal obligor to the extent of his contribution. *Id.* § 58, illus. 1-4, at 249-50.

{20}    Applying the Restatement's approach to the facts presented in this case, we reverse the district court's ruling as to the principal amount.  We hold that Randles, as a contributing cosurety, was entitled to recourse from Speedway for the principal to the extent of her earlier contribution to KCB.  That is, following Randles' contribution, Randles and KCB were in the same position and had the same rights in seeking recourse from Speedway for their respective payments under the guaranty either through initial performance (by KCB) or contribution (by Randles).  Thus, when Speedway agreed to pay $500,000 to cover the principal during bankruptcy proceedings, KCB's claim to the $500,000 should have been reduced by $100,000 based on Randles' contribution, and Randles should then have been allowed to claim the $100,000 based on her contribution.  Under the Restatement, Randles correctly asserted a right to the $100,000 principal in the bankruptcy proceedings under theories of reimbursement or subrogation.  Speedway had a duty to reimburse Randles to the extent of her contribution or, alternatively, Randles became subrogated to the rights of the bank against Speedway to the extent of her contribution.  Although Randles also made arguments based on restitution in her briefing, we follow the Restatement's approach and conclude that restitution is not available to her because Speedway, as principal obligor, has

7

always had notice of the personal guaranties. *See* Restatement (Third) of Suretyship & Guaranty § 58 cmt. c, at 249. This result would prevent any double recovery on the part of KCB and would also make both KCB and Randles whole for their respective actions as a result of Speedway's default.

**{21}** Having determined that Randles is entitled to the principal amount under the approach of the Restatement, we turn to examine whether KCB's arguments preclude her recovery. KCB's arguments regarding the principal amount do not change our holding. Based on our above reasoning, we disagree with KCB's first argument that subrogation is inapplicable to the facts of this case. This leaves only KCB's second argument on appeal, which is that the doctrine of unclean hands precludes Randles from seeking any portion of the principal amount paid by Speedway to KCB in the bankruptcy proceedings. "The doctrine of unclean hands generally prevents a complainant from recovering where he or she has been guilty of fraudulent, illegal or inequitable conduct in the matter with relation to which he [or she] seeks relief." *Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 36, 139 N.M. 288, 131 P.3d 675 (alteration in original) (internal quotation marks and citation omitted). The doctrine is invoked in circumstances where the complainant has "dirtied [his or her hands] in acquiring the right he [or she] now asserts." *Romero v. Bank of the Sw.*, 2003-NMCA-124, ¶ 38, 135 N.M. 1, 83 P.3d 288 (internal quotation marks and citation omitted). Here, KCB contends that the doctrine applies because Randles engaged in inequitable conduct by "not shar[ing] the burden [of Speedway's default] with the other guarantors" and by letting "the entire onus of responding to Compass Bank fall on KCB." In support, KCB relies on *Lampton v. Staebler*, 67 S.W.2d 473 (Ky. Ct. App. 1934), a case that involved the right of contribution between cosureties and which held that a performing cosurety's inequitable conduct can lead to a forfeiture of his or her right to seek contribution. *Id.* at 478.

**{22}** We do not consider *Lampton* to be applicable to the facts of this case. Here, we are not faced with a claim for contribution between cosureties or the right of a performing cosurety to seek contribution; rather, we are concerned with the rights of cosureties in post-contribution circumstances. In this lawsuit, which concerns a determination of the legal and equitable remedies available to KCB and Randles against a third party, Speedway, we remain unconvinced that Randles engaged in conduct during the bankruptcy proceedings or in district court that would merit application of the unclean hands doctrine. *See Gen. Electric Co. v. Klein*, 129 A.2d 250, 252 (Del. Ch. 1956) ("The repentant sinner, especially where he has been duly punished, is not unwelcome in equity."); *Halls v. White*, 2006 SD 47, ¶ 18, 715 N.W.2d 577, 585 ("If a person guilty of unconscionable or wrongful conduct purges himself or herself by adequate and effective renunciation and repudiation, the right to relief will be restored." (alteration omitted) (internal quotation marks and citation omitted)). Additionally, whatever inequitable conduct Randles engaged in after Speedway's default was remedied by the judgment KCB obtained against her. Once KCB received the judgment, which included attorney fees and costs, it was made whole with respect to the portion of the principal that it had paid to the bank on Randles' behalf.

**{23}** Therefore, we reverse the grant of summary judgment in favor of KCB and remand with instructions to enter summary judgment in favor of Randles as to the $100,000 principal.

8

## C.    Whether Randles is Entitled to the $100,000 Premium

**{24}**    Randles argues that she became entitled to the $100,000 premium as soon as she executed the promissory note as a guarantor.  She contends that the terms of the Compensation Agreement did not require the guarantors to actually perform the guaranty in order to receive compensation.  KCB interprets the terms of the Compensation Agreement differently, arguing that it should be construed together with the Memorandum Agreement based on this Court's holding in *Master Builders, Inc. v. Cabbell*, 95 N.M. 371, 373, 622 P.2d 276, 278 (Ct. App. 1980) ("[I]n the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together[.]" (internal quotation marks and citation omitted)).  Construing the two written agreements together, KCB contends that performance of the guaranty was required in order to receive compensation and, therefore, Randles' breach of the Memorandum Agreement precludes her from being entitled to a premium payment under the Compensation Agreement.  Alternatively, KCB argues that even if the Compensation Agreement is considered in isolation, Randles breached that agreement because she did not provide a guaranty as contemplated by the agreement based on the word's usual and customary meaning.

**{25}**    The parties contend that resolution of this issue on appeal is a question of contract interpretation requiring us to determine whether the Compensation Agreement is ambiguous as to what constitutes performance—that is, we must decide whether the terms of the Compensation Agreement provide that Randles and KCB earned the premium upon execution of the promissory note or upon performance of the guaranty in the event of a default.  On a somewhat related ground, we understand the parties to also argue that we must decide whether the Compensation Agreement and the Memorandum Agreement should be construed together as one instrument for purposes of determining the respective rights of the parties to the disputed $100,000 premium.  This requires us to consider the rule from *Master Builders* that two or more writings should be construed together if they are part of the same transaction, which Randles refers to as the "joint construction" principle on appeal and which was referred to as "incorporation by reference" in the record below.

**{26}**    We begin our analysis by setting forth the applicable law governing ambiguity in contractual agreements in the context of motions for summary judgment.  It is well established that "[w]hether a contractual provision is ambiguous is a question of law, which we review de novo." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 13, 133 N.M. 804, 70 P.3d 794 (internal quotation marks and citation omitted).  We utilize the following approach in determining whether a contract term is ambiguous:

> The standard to be applied in determining whether a contract is subject to equally logical but conflicting interpretations is the same standard applied in a motion for summary judgment.  If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law, and summary judgment would be proper.  On the other hand, if the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity

exists, and summary judgment would not be proper. Rather, the jury must resolve any factual issues presented by the ambiguity. In resolving ambiguity, extrinsic evidence may be admitted to aid the jury in interpreting the intent of the parties. The jury must then decide if the evidence presented supports one interpretation rather than the other.

*Id.* (alteration omitted) (internal quotation marks and citations omitted). As our Supreme Court held in *Mark V, Inc. v. Mellekas*, a district court may consider extrinsic evidence in making its preliminary finding of whether a contractual provision is ambiguous. 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). In other words, a district court "may consider the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance in making its threshold determination of whether the contract terms are ambiguous." *McNeill*, 2003-NMCA-078, ¶ 14.

**{27}** In this case, the provision of the Compensation Agreement at issue is the language concerning payment of the premium:

> **II.** **COMPENSATION IN EXCHANGE FOR GUARANTY OF NOTE**
>
> **A.** **Amount of Compensation Paid to Guarantors**. In exchange for the guaranty of the obligations of Speedway under the Note, Speedway agrees to pay the Guarantors the total sum of FOUR HUNDRED NINETY-FIVE THOUSAND AND 00/100 DOLLARS ($495,000), plus all accrued interest under the Note until the Note is paid in full.

**{28}** On appeal, the parties' disagree as to whether the district court actually found the Compensation Agreement ambiguous and specifically the above language that Speedway would pay the premium "[i]n exchange for the guaranty of the obligations of Speedway under the Note." Although the district court did not enter a specific finding that this language was ambiguous, our review of the hearing indicates that the court considered the parties' various arguments regarding interpretation of the Compensation Agreement and that the court appeared to agree with KCB's interpretation that the two agreements should be construed together. The court stated that "under the [C]ompensation [A]greement, there was no entitlement to any recovery of those funds because in equity there was a failure to perform under the [M]emorandum [A]greement." Randles contends that the district court must have found ambiguity in the Compensation Agreement in order to reach the conclusion that a guarantor must have performed the guaranty in order to earn the premium payment. KCB counters that the district court did not need to address ambiguity of the Compensation Agreement because performance was a requirement under the Memorandum Agreement and "all writings that are part of the same transaction are interpreted together."

**{29}** Both Randles and KCB assert on appeal that the language of the Compensation Agreement is unambiguous and supports their respective interpretations. We must determine, therefore, whether the Compensation Agreement is reasonably susceptible to the two interpretations argued by the parties; if we determine that it is, then the district court erred in granting summary judgment and we must remand for a fact finder to resolve the

10

ambiguity. *See C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991) ("[I]f the court finds ambiguity, the jury (or court as the fact finder in the absence of a jury) resolves the ambiguity as an issue of ultimate fact[.]").

**{30}** We first consider Randles' interpretation of the Compensation Agreement. Randles construes the language of the agreement to mean that upon execution of the guaranty on the promissory note alone, the guarantors became automatically entitled to the premium payment. She argues that the text of the agreement contains no express language requiring performance under the Memorandum Agreement as a prerequisite to earning the premium under the Compensation Agreement. Instead, in her view, the guarantors receive the premium regardless of whether there was a default by Speedway. In other words, even if Speedway did not default and the guarantors were thus never required to perform the guaranty under the Memorandum Agreement, Speedway would nevertheless be required to make the premium payment to the guarantors. To support her interpretation, Randles points to extrinsic evidence in the form of an offer letter from Speedway that pre-dates the Compensation Agreement and provides that the "compensation [i.e., the premium] will be paid at Phase I funding." Randles appears to argue that the fact compensation would occur at Phase I funding indicates that Speedway would pay the premium even in a no-default scenario where the guaranty was not performed.

**{31}** KCB counters by arguing that the terms of the Compensation Agreement require performance of the guaranty in two primary ways. First, KCB contends that the Memorandum Agreement was "incorporated" into the Compensation Agreement under the holding of *Master Builders*. KCB claims that the two writings were part of a single transaction, concern the same subject matter and were executed on the same date and, therefore, they should be read and construed together as a single contract. If the agreements are construed together, KCB contends that performance of the guaranty under the terms of the Memorandum Agreement was necessary before Randles had any legal right to enforce the terms of the Compensation Agreement. KCB further argues that even if there was no explicit requirement of performance in the Compensation Agreement, there was an implicit requirement that each guarantor had a duty to actually honor the guaranty based on the usual and customary meaning of the word "guaranty." In its view, the only reasonable interpretation of the agreement is "that the guarantors who in fact bore the risk upon Speedway's default and performed when needed would correspondingly be entitled to recover a proportionate share of any compensation Speedway paid as the reward for that performance."

**{32}** Although we recognize that "[t]he mere fact that the parties are in disagreement on construction to be given to the contract does not necessarily establish an ambiguity," we conclude that the contractual language at issue here is fairly and reasonably susceptible to the two different constructions put forth by the parties, thereby creating an ambiguity. *Levenson v. Mobley*, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987); *see Mark V, Inc.*, 114 N.M. at 781, 845 P.2d at 1235 ("If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists."). We determine that the Compensation Agreement is ambiguous as to what event triggers payment of the premium and susceptible to conflicting interpretations in this regard. On the one hand, the agreement is vague and does not explicitly state under what circumstances, the premium payment

would be made. The agreement does not define the word "guaranty" and it is silent as to the means and manner of payment of the premium. Additionally, the agreement contains an integration clause stating that it is the "entire agreement of the parties with respect to the subject matter hereof," and Speedway's offer letter may support Randles' interpretation. On the other hand, it would not be unreasonable to conclude that the two contracts are incorporated and should be construed together because they were signed on the same date by all five guarantors and Speedway and arguably involve the same subject matter and transaction. Moreover, we conclude that several material issues of fact exist regarding the parties' intent and the circumstances surrounding execution of the two written agreements: Did the parties expect payment of the premium in a no-default scenario or only if there was a default? Under what circumstances did the guarantors sign the agreements? What was Speedway's intent in obtaining the guaranties? All of these questions remain unresolved on appeal and subject to multiple conflicting inferences, none of which are fully resolved by the evidentiary record. We note that "[a]lthough a written contract need not detail every term, essential terms must be expressly provided or necessarily implied by construction for a court to find the contract unambiguous on its face." *McNeill,* 2003-NMCA-078, ¶ 27.

**{33}** Based on the foregoing, we hold that it was improper for the district court to grant summary judgment at this stage. Rather, the meaning to be assigned to the ambiguous language of the Compensation Agreement and the parties' intent are questions of fact that should be decided by a fact finder. Therefore, we reverse and remand to the district court for further proceedings on the premium amount.

**CONCLUSION**

**{34}** For the reasons set forth above, we reverse the district court's grant of summary judgment to Defendants KCB and Hanson and the denial of summary judgment to Randles under the Memorandum Agreement. We hold that Randles is entitled to the $100,000 principal under that agreement, and we therefore instruct the district court on remand to enter summary judgment in favor of Randles as to that amount. With respect to the $100,000 premium amount under the Compensation Agreement, we remand for further proceedings consistent with this opinion.

**{35}    IT IS SO ORDERED.**

 

 

                              **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

 

**MICHAEL E. VIGIL, Judge**

 

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Randles v. Hanson*, Docket No. 29,427**

| | |
|---|---|
| **AE** | **APPPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-FI | Financial Institutions |
| CM-GU | Guarantee |
| CM-CM | Commercial Law, General |
| | |
| **CS** | **CORPORATIONS** |
| CS-CP | Capital Contributions |
| | |
| **RE** | **REMEDIES** |
| RE-RT | Restitution |
| RE-SB | Subrogation |