2005-NMCA-109

118 P.3d 194

**Kim TALBOTT and Bonnie M. Talbott, as Personal Representatives of the Estate of Damon K. Talbott, Deceased, Plaintiffs–Appellees,**

v.

**ROSWELL HOSPITAL CORPORATION, d/b/a Eastern New Mexico Medical Center, Defendant–Appellant.**

No. 24,545.

Court of Appeals of New Mexico.

June 22, 2005.

Certiorari Denied, No. 29,338, Aug. 11, 2005.

Michael T. Worley, Clay H. Paulos, Ian D. McKelvy, Sanders, Bruin, Coll & Worley, P.A., Roswell, NM, Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, Michael L. Slack, Slack & Davis, LLP, Austin, TX, for Appellees.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} Roswell Hospital Corporation (the Hospital) appeals from a judgment in favor of Kim and Bonnie Talbott (Plaintiffs), as co-personal representatives of the estate of Damon K. Talbott (Decedent). The Hospital raises six issues on appeal. We reverse and remand on grounds that a significant question of fact was improperly decided by the district court, rather than the jury. We also address a challenge to the sufficiency of the evidence to establish proximate cause. We find it unnecessary to consider the remaining issues.

**BACKGROUND**

{2} This case arises from a fatal helicopter crash that occurred near Roswell, New Mexico on October 19, 2001. At the time, Decedent was participating in a landing-zone training exercise conducted by an air ambulance service, Medical Air Transport, Inc. (MAT), at the local State Police Office.

{3} MAT had been operating in the Roswell area since December of 2000, and it utilized a helicopter pad at the Hospital as its base of operations. Apart from using the Hospital's helicopter pad, MAT's relationship with the Hospital was fairly limited and relatively informal, as discussed at greater length below.

{4} An investigation was conducted after the crash. Experts concluded that there were two possible direct causes of the accident: (1) overly aggressive maneuvering of the helicopter or (2) failure of the hydraulic system. Without going into unnecessary detail, it was undisputed that in either of these possible scenarios, pilot negligence was involved.

{5} Plaintiffs sued the Hospital, MAT, and the pilot, among others. As a consequence of settlements and other developments, Plaintiffs dismissed their claims against all of the defendants except the Hospital. The case proceeded to trial, and the jury returned a verdict in Plaintiffs' favor, from which the Hospital appeals.

**DISCUSSION**

### Duty of Care

{6} The first issue on appeal concerns the existence of a duty of care, a necessary element of Plaintiffs' tort claims. *See Bober v. N.M. State Fair*, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991) (observing that "an injured person's complaint must allege at least *some* facts ... giving rise to invocation of th[e] duty [to exercise ordinary care for the safety of others]"). Two theories have been advanced. We address each in turn.

*Restatement (Second) of Torts § 411*

{7} Throughout the proceedings below, Plaintiffs based their claims against the Hospital on the Restatement (Second) of Torts § 411 (1965) (Section 411). Section 411 provides that an employer can be held liable for negligence in the selection of an independent contractor. *See Williams v. Cent. Consol. Sch. Dist.*, 1998–NMCA–006, ¶ 16, 124 N.M. 488, 952 P.2d 978. On appeal, the Hospital does not mount a generalized attack on the viability of this approach. Rather, the dispute is confined to the applicability of Section 411 in light of the particular facts and circumstances of this case. We limit our discussion accordingly. *See In re Doe*, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (indicating that appellate courts should not reach issues the parties fail to raise on appeal).

{8} Below, the Hospital argued that Section 411 could not be relied upon to establish a duty of care on its part, because the evidence did not establish an employer-independent contractor relationship between MAT and itself. After each party had fully presented its case the district court directed a verdict as to this issue, ruling that the evidence conclusively established a relationship within the scope of Section 411. The Hospital challenges this determination on appeal.

{9} Generally, "[t]he existence of a legal duty is a question of law that this Court reviews de novo." *Davis v. Bd. of County Comm'rs,* 1999–NMCA–110, ¶ 11, 127 N.M. 785, 987 P.2d 1172. However, "[w]here the facts and circumstances of the relationship between the parties are at issue, [the] existence of a duty may become a mixed question of law and fact under which the fact issue must be submitted to the jury for resolution." *Eckhardt v. Charter Hosp., Inc.,* 1998–NMCA–017, ¶ 39, 124 N.M. 549, 953 P.2d 722 (internal quotation marks and citation omitted). Therefore, we must evaluate the facts and circumstances surrounding the Hospital's dealings with MAT to determine whether the nature of their relationship should have been assessed by the jury, rather than the district court.

{10} The applicability of Section 411 hinges on MAT's status as an independent contractor. An independent contractor is defined as "a person *who contracts with another to do something for him* but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Restatement (Second) of Agency § 2(3) (1958) (emphasis added); *see Chavez v. Sundt Corp.,* 122 N.M. 78, 82, 920 P.2d 1032, 1036 (1996); *Harger v. Structural Servs., Inc.,* 121 N.M. 657, 664, 916 P.2d 1324, 1331 (1996). The emphasized portions of this definition form the basis of the Hospital's challenge on appeal. Specifically, the Hospital contends that (1) it entered into no contract with MAT and (2) MAT provided no services to the Hospital. We address each of these sub-issues in turn.

## 1. Existence of a Contractual Relationship

{11} In regard to the existence of a contract, the following undisputed evidence was presented. MAT's founders approached the Hospital in July of 2000, seeking to base an air ambulance service at the Hospital. The negotiations did not culminate in a formal, written contract. However, the parties reached an oral agreement, and the minutes of a Hospital board meeting described the resulting relationship as contractual. Under the terms of the agreement, MAT was permitted to base its helicopter at the Hospital's helicopter pad. Furthermore, MAT was given preferential status, such that MAT was granted the first opportunity to provide transport services for the Hospital's patients. The Hospital also agreed not to displace MAT arbitrarily. Financially, the Hospital and MAT remained wholly separate, and no monies were exchanged. The Hospital received no portion of the funds paid by patients for air transport services, and MAT received no remuneration from the Hospital. Pursuant to this agreement, MAT commenced operations in December of 2000.

{12} "[W]hen the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist." *Eckhardt,* 1998–NMCA–017, ¶ 39, 124 N.M. 549, 953 P.2d 722 (quoting *Garcia v. Middle Rio Grande Conserv. Dist.,* 99 N.M. 802, 807, 664 P.2d 1000, 1005 (Ct.App.1983), *overruled on other grounds by Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 357, 838 P.2d 971, 974 (1992)) (internal quotation marks omitted). Accordingly, we must determine whether the foregoing evidence conclusively established the existence of a contract.

{13} Although the evidence described above is indicative, no single fact or feature is determinative. Neither the absence of a formal, written agreement nor the lack of pecuniary interest is fatal to the existence of a contract. *See Wester v. Trailmobile Co.,* 59 N.M. 73, 76–77, 279 P.2d 526, 528 (1955) (observing that any benefit to the promisor or detriment to the promisee constitutes consideration); *see generally* 1 Richard A. Lord,

*Williston on Contracts* § 1:16, at 39 (1990) (observing that "except for statutory enactments which require a writing as a precondition to enforceability ... there is no difference between oral and written contracts"). Conversely, neither the existence of an "agreement" nor the Hospital's characterization of the relationship in the minutes definitively establishes the existence of a contractual relationship. *See, e.g., Smith v. Vill. of Ruidoso*, 1999–NMCA–151, ¶¶ 29–35, 128 N.M. 470, 994 P.2d 50 (holding that an agreement, premised on a gratuitous promise, was not sufficient to support the existence of a contract); *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 679, 884 P.2d 832, 835 (Ct.App. 1994) (observing that a party's characterization is not dispositive of the legal question whether a contractual relationship exists).

{14} Because no single factor is decisive, we must consider the attributes of contractual relationships, in light of the dealings between the Hospital and MAT as a whole, to determine whether a contract existed. *Cf. Gormley v. Coca–Cola Enters.*, 2004–NMCA–021, ¶ 20, 135 N.M. 128, 85 P.3d 252 (observing that the totality of the circumstances must be considered when evaluating whether an implied contract of employment exists), *aff'd*, 2005–NMSC–003, 137 N.M. 192, 109 P.3d 280. The essential attributes of a contract include an offer, an acceptance, consideration, and mutual assent. *See DeArmond v. Halliburton Energy Servs., Inc.*, 2003–NMCA–148, ¶ 9, 134 N.M. 630, 81 P.3d 573. Among these elements, we conclude that the proof of an offer, and of consideration, was equivocal.

{15} "An offer is a communication of a willingness to enter into a contract." UJI 13–805 NMRA. A contract is defined as "a legally enforceable promise [or] [set of promises]." UJI 13–801 NMRA. Among other things, the offeror must have intended, by the communication, to give the offeree the power to create a contract through acceptance. UJI 13–805. In this case, no direct evidence appears to have been presented on the question of intent, and conflicting inferences could be drawn from the indirect evidence. Witnesses testified that an oral agreement was reached, and that operations commenced pursuant to that agreement. This suggests that the necessary willingness and intent were invested. However, representatives of both the Hospital and MAT also testified that there was no contract between them and that the negotiations to create a written, formal contract were unsuccessful. The Hospital representative testified that there was not even an agreement. From this, a lack of willingness to enter a contract could be inferred. These conflicting inferences should have been resolved by the jury. *See Eckhardt*, 1998–NMCA–017, ¶ 39, 124 N.M. 549, 953 P.2d 722.

{16} The proof of consideration was similarly ambivalent. "A valid contract must possess mutuality of obligation. Mutuality means both sides must provide consideration." *Bd. of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct.App.1994) (citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Heye v. Am. Golf Corp.*, 2003–NMCA–138, ¶ 12, 134 N.M. 558, 80 P.3d 495; *see* Restatement (Second) of Contracts §§ 73, 75, at 179, 189 (1981). "Furthermore, a promise must be binding. When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration." *Heye*, 2003–NMCA–138, ¶ 12, 134 N.M. 558, 80 P.3d 495.

{17} The Hospital's agreement to permit MAT to use its helicopter pad and to give MAT preferential status, as well as its assurance that MAT would not be displaced arbitrarily, would suffice to establish consideration. However, the evidence presented below failed to establish a reciprocal obligation on MAT's part. MAT was not required to provide air ambulance services when contacted by the Hospital. To the contrary, the evidence appears to have indicated that any action or forbearance on MAT's part was optional.

{18} The Hospital contends that this lack of obligation on MAT's part definitively resolves the question of the existence

of a contract in its favor. However, "[a]n optional contract may be enforced . . . when mutuality comes into existence by reason of an executed consideration." *Acme Cigarette Servs., Inc. v. Gallegos,* 91 N.M. 577, 581, 577 P.2d 885, 889 (Ct.App.1978). Accordingly, where a contract lacks mutuality at its inception, performance may act as a substitute for consideration. *Id.* at 582, 577 P.2d at 890.

{19} In this case, there was evidence that MAT commenced operations from the Hospital's helicopter pad in December of 2000 and provided air ambulance services to a number of the Hospital's patients prior to the accident. Accordingly, the question arises whether these actions should be characterized as the sort of "performance" that supplies consideration. To constitute consideration in support of the putative contract, MAT's actions must have been something for which the Hospital bargained. *See Romero v. Earl,* 111 N.M. 789, 791, 810 P.2d 808, 810 (1991) (stating that "[c]onsideration adequate to support a promise is essential to enforcement of the contract and must be bargained for by the parties"). Something is bargained for "if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* (internal quotation marks and citation omitted).

{20} Based on the evidence presented below, the finder of fact could infer that the Hospital bargained for MAT's activities. As previously described, the Hospital allowed MAT to occupy its helicopter pad and assured MAT that it would receive the first opportunity to perform transport services to or from the Hospital. Having extended itself in this fashion, it might be presumed that the Hospital felt that MAT's presence was desirable. Further, evidence was presented that the Hospital was able to provide enhanced services to its patients as a consequence of MAT's presence, and the Hospital received a number of patients by virtue of MAT's air transport services. These benefits further suggest that the Hospital bargained for MAT's performance.

{21} However, evidence was also presented which would support a conflicting inference. Representatives of the Hospital testi-

fied below that the Hospital did not regard MAT's presence as any particular benefit to it and that the Hospital neither sought nor desired anything from MAT. The absence of any clear obligation on MAT's part, from the inception of the relationship onward, supports this assertion. The fact that the Hospital received no direct financial benefit from its relationship with MAT further supports the inference that MAT's activities were not bargained for. Accordingly, we conclude that the evidence falls short of definitively establishing consideration to support the putative contract between the parties.

{22} In summary, the evidence was capable of supporting conflicting inferences on the existence of a contractual relationship between MAT and the Hospital. This, in turn, creates a question of fact concerning the characterization of MAT either as an independent contractor, such that Section 411 applies, or as a licensee, such that Section 411 does not apply. The district court should have permitted the jury to resolve this issue.

### 2. Provision of Services

{23} As stated above, the Hospital has attacked the district court's reliance upon Section 411 to establish a duty of care on two grounds. The first prong of the attack is focused on the existence of a contractual relationship. For the reasons described above, we conclude that the evidence was not conclusive on this point. As a result, the district court erred in taking the issue from the jury.

{24} The second prong of the Hospital's attack is focused on the definition of an independent contractor as one that does something for its employer. Below, Plaintiffs argued that the evidence definitively established that MAT performed a service for the Hospital. The Hospital contends that Plaintiffs adduced no evidence in support of this determination. Once again, we conclude that the evidence is capable of supporting conflicting inferences.

{25} Our published authorities do not directly address the aspect of an independent contractor-employer relationship that con-

templates the performance of a service by the independent contractor for the employer. However, it seems reasonably clear that this is meant to reflect that the independent contractor has engaged in some undertaking on the employer's behalf or for the employer's benefit. This is a common thread throughout the law of agency. *See generally* UJI 13–401 NMRA ("An agent is a person who, by agreement with another called the principal, ... manages some affair or does some service for the principal, with or without compensation.").

{26} No evidence appears to have been presented to suggest that MAT acted on the Hospital's behalf, in any representative capacity. However, as described above, evidence was presented on the question of benefit to the Hospital. For the reasons previously stated, the evidence supported conflicting inferences on this point. As a result, the provision-of-services issue neither provides a basis for affirmance of the district court's ruling on the independent contractor issue nor a basis for judgment as a matter of law in the Hospital's favor. Instead, this is another issue that should have been submitted to the jury for resolution, such that the case must be remanded.

*Association and/or Facilitation*

{27} As an alternative basis for affirmance, Plaintiffs advance a new theory of tort liability. Plaintiffs urge the Court to adopt a rule by which "an actor who empowers or enables a third person to act in a capacity in which that person's negligence or misconduct may foreseeably injure another is under a duty to exercise ordinary care in selecting the third person or facilitating the third person's conduct."

{28} Plaintiffs' theory represents a significant departure from current tort liability jurisprudence in New Mexico, for which we have an inadequate basis in law. The authorities upon which Plaintiffs rely in support of their novel argument merely illustrate the existence of a duty of care in a variety of well-established situations. *See, e.g., Reichert v. Atler,* 117 N.M. 623, 624, 875 P.2d 379, 380 (1994) (observing that a business proprietor owes a duty of care toward patrons

under a theory of premises liability); *Eckhardt,* 1998–NMCA–017, ¶¶ 36, 40, 124 N.M. 549, 953 P.2d 722 (observing that a hospital owes a duty to act with reasonable care in furnishing services to patients); *Diaz v. Feil,* 118 N.M. 385, 389, 881 P.2d 745, 749 (Ct.App. 1994) ("[I]t is beyond question in New Mexico that a hospital owes an independent duty of care to patients at the hospital."); *Valdez v. Warner,* 106 N.M. 305, 307, 742 P.2d 517, 519 (Ct.App.1987) (observing that an employer owes a duty of care toward members of the public who might foreseeably be injured as a result of the hiring of an employee); *see also Herrera v. Quality Pontiac,* 2003–NMSC–018, ¶¶ 31–32, 134 N.M. 43, 73 P.3d 181 (recognizing a duty of care on the part of a car repair business entrusted with an automobile); *DeMatteo v. Simon,* 112 N.M. 112, 114, 812 P.2d 361, 363 (Ct.App.1991) (implicitly acknowledging a duty of care on the part of one who negligently entrusts a chattel, specifically an automobile). As a result, these cases cannot provide direct support for the extension of tort liability that Plaintiffs advocate.

{29} The recognition of a legal duty involves consideration of both foreseeability and policy. *Herrera,* 2003–NMSC–018, ¶ 7, 134 N.M. 43, 73 P.3d 181. Although Plaintiffs assert that their novel theory comports with the foreseeability requirement, they are unable to identify any authority suggesting that public policy considerations would support the expansion of tort liability that they seek. In our estimation, adoption of Plaintiffs' novel theory would " 'unwittingly impose unreasonable and uncertain duties.' " *Gabaldon v. Erisa Mortgage Co.,* 1999–NMSC–039, ¶ 37, 128 N.M. 84, 990 P.2d 197 (quoting Robert M. Howard, *The Negligent Commercial Transaction Tort: Imposing Common Law Liability on Merchants for Sales and Leases to "Defective" Customers,* 1988 Duke L.J. 755, 758). As a result, we decline the invitation to adopt Plaintiffs' broad theory of tort liability.

**Causation**

{30} By its second issue, the Hospital challenges the sufficiency of the evidence to establish a causal connection between its puta-

tive selection of MAT as an independent contractor and Decedent's death. The Hospital's arguments are addressed to both the element of cause in fact and the element of proximate cause.

*Cause in Fact*

{31} "To establish liability, there must be a chain of causation initiated by some negligent act or omission of the defendant, which in legal terms is the cause in fact ... of [the] plaintiff's injury." *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001–NMCA–045, ¶ 18, 130 N.M. 532, 27 P.3d 1019. The Hospital asserts that Plaintiffs failed to establish this element below. Consequently, the Hospital contends that the district court erred in denying its motions for directed verdict and judgment notwithstanding the verdict.

{32} In the course of the trial, representatives of MAT testified in some detail about the development of MAT's relationship with the Hospital. When the Hospital declined to enter a written contract, MAT considered alternate arrangements. Dr. Levy, who was largely responsible for MAT's presence in the Roswell area, testified that MAT was prepared to base its operations at the nearby airport if an agreement could not be reached with the Hospital. In light of this testimony, the Hospital asserts that MAT would have been operating in Roswell on the day of the accident, whether it had reached an operating agreement with the Hospital or not. Moreover, the training exercise that MAT was conducting on the day of the accident did not in any way involve providing patient services to the Hospital. As such, the Hospital argues that Plaintiffs would have suffered the same harm regardless of any negligence on the Hospital's part in associating with MAT.

{33} If the foregoing evidence was undisputed, reversal might well be in order. However, the record contains other evidence from which the jury could reasonably have inferred that MAT would not have established operations in Roswell, and the training accident would not have occurred, if the Hospital had not entered into an agreement with MAT. Specifically, Dr. Levy testified that the first-call arrangement with the Hospital was essential to MAT's economic success. This evidence suggests that the relationship with the Hospital was key to MAT's presence in the Roswell area. Although the Hospital suggests that MAT would have received similar preferential status if it was based at the airport, this is speculative, and it seems equally possible that no such assurance would have been given. When reviewing the denial of a directed verdict, we must view the evidence in the light most favorable to the prevailing party. *See Couch v. Astec Indus., Inc.*, 2002–NMCA–084, ¶ 28, 132 N.M. 631, 53 P.3d 398. Applying this standard, the evidence was sufficient to support a determination that MAT would not have been in the area, and the crash would not have occurred, absent the Hospital's involvement.

*Proximate Cause*

{34} An act or omission may be deemed a "proximate cause" of an injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury. UJI 13–305 NMRA. This is generally a question of fact for the jury to decide. *See Herrera*, 2003–NMSC–018, ¶ 8, 134 N.M. 43, 73 P.3d 181. Proximate cause only becomes a question of law "when facts regarding causation are undisputed and all reasonable inferences therefrom are plain, consistent and uncontradictory." *Harless v. Ewing*, 80 N.M. 149, 151, 452 P.2d 483, 485 (Ct.App.1969).

{35} The proximate cause issue takes on a particularized form in cases involving claims of negligent selection of independent contractors. Comment b to Section 411 of the Restatement (Second) of Torts specifically provides:

The employer of a negligently selected contractor is subject to liability under the rule stated in this Section for physical harm caused by his failure to exercise reasonable care to select a competent and careful contractor, but only for such physical harm as is so caused. In order that the employer may be subject to liability it is, therefore, necessary that harm shall result from some quality in the contractor

which made it negligent for the employer to entrust the work to him. Thus, if the incompetence of the contractor consists in his lack of skill and experience or of adequate equipment but not in any previous lack of attention or diligence in applying such experience and skill or using such equipment as he possesses, the employer is subject to liability for any harm caused by the contractor's lack of skill, experience, or equipment, but not for any harm caused solely by the contractor's inattention or negligence.

*Id.*

{36} Below, Plaintiffs' theory was that the Hospital was negligent in employing MAT, insofar as the Hospital failed to establish criteria for the selection of an air ambulance service provider and the Hospital failed to investigate MAT's record and qualifications. Plaintiffs specifically asserted that if the Hospital had engaged in these activities, it would have discovered that MAT was poorly qualified to provide air ambulance services based on its unsatisfactory safety record and the relative lack of training and experience of its pilots. Accordingly, Plaintiffs' claims were premised on a theory that MAT lacked appropriate policies to address safety issues, employed pilots who lacked the necessary skill and experience, or both. These were the qualities that allegedly made it negligent for the Hospital to employ MAT and that allegedly led to the crash.

{37} Applying comment b to Section 411, the Hospital contends that Decedent's death did not result from the qualities that allegedly made MAT's employment negligent. In this regard, the Hospital focuses on the undisputed testimony of the expert witness, who opined that the direct cause of the accident was pilot negligence, either in the form of overly aggressive maneuvering or in the form of failure to perform a standard preflight safety check of the helicopter's hydraulic system. The Hospital argues that in either case, the pilot's error constituted inattention or lack of diligence, not a lack of skill or experience.

{38} The Hospital's argument is dependent upon a narrow view of the evidence. In addition to the evidence of the specific acts or omissions of the pilot that led to the crash, Plaintiffs presented evidence of MAT's history. Specifically, Plaintiffs introduced evidence that an investigation by the Hospital prior to its association with MAT would have revealed that the majority of MAT's pilots had failed spot checks, that the FAA found MAT's training and operations manuals to be deficient, and that MAT had been investigated for misrepresenting pilot training. Furthermore, Plaintiffs introduced evidence that the pilot responsible for the accident lacked sufficient flight experience to meet industry standards.

{39} Taking a broad view of the evidence that was presented below, the jury could have found that MAT had a poor safety record, specifically with respect to pilot training and experience. The jury could further have found that this quality made it negligent for the Hospital to employ MAT. As previously stated, the evidence indicated that the accident of October 19, 2001, was caused by overly aggressive maneuvering or failure to perform a safety check. There was also evidence that the pilot had too few hours of flight experience to meet industry standards and lacked experience flying under the conditions that were present at the time of the accident. Once again, taking a broad view of the evidence that was presented at trial, the jury could have inferred that either the aggressive maneuvering or the failure to perform the safety check was caused by the pilot's lack of skill or experience or by the pilot's lack of safety training. In summary therefore, the jury could have found that the qualities of MAT that the Hospital negligently failed to discover, disregard for pilot qualifications and safety, caused the crash.

{40} The Hospital asserts that the foregoing theory, by which the crash is attributed to pilot inexperience, is but a possibility. Because it is equally possible that the crash was caused by pilot inattention or lack of diligence, the Hospital argues that Plaintiffs failed to sustain their burden of proof. *See Alberts v. Schultz*, 1999–NMSC–015, ¶ 29, 126 N.M. 807, 975 P.2d 1279 (observing, in the context of a medical malpractice action, that "the plaintiff must introduce evidence that the injury more likely than not was

proximately caused by the act of negligence" in question). However, the Hospital's argument amounts to an invitation to weigh the evidence. This Court cannot supplant the jury in this regard. *See Dawley v. La Puerta Architectural Antiques, Inc.*, 2003–NMCA–029, ¶ 12, 133 N.M. 389, 62 P.3d 1271 ("On appeal, we do not re-weigh the evidence or substitute our judgment for that of the fact-finder, but determine whether substantial evidence supports the result reached."). It is for the jury to weigh the evidence, and in this case, the jury could reasonably have found Plaintiffs' hypothesis to be more compelling than the Hospital's. *See Bank of N.M. v. Rice*, 78 N.M. 170, 173–74, 429 P.2d 368, 371–72 (1967) (observing that if reasonable minds may differ as to a conclusion to be reached under the evidence or permissible inferences, resolution of the issue is for the jury to determine); *see also State v. Chandler*, 119 N.M. 727, 732, 895 P.2d 249, 254 (Ct.App.1995) (stating that when a criminal defendant urges the equal hypotheses argument, appellate court's answer is that the jury, by its verdict, demonstrated that it considered the hypothesis it found to be more reasonable).

### Jury Instruction Issues

{41} The Hospital also seeks review of several of the jury instructions, focusing on the instruction submitted pursuant to UJI 13–302(B) NMRA. Because we reverse the judgment and remand on other grounds, and because we cannot know how the proceedings will unfold on remand, it is unnecessary for us to reach these issues. *See, e.g., State v. Barragan*, 2001–NMCA–086, ¶ 1, 131 N.M. 281, 34 P.3d 1157 (declining to reach a challenge to the jury instructions where the judgment was reversed and remanded on other grounds).

### Evidentiary Issues on Cross–Appeal

{42} Plaintiffs also raise two issues on cross-appeal, challenging the district court's exclusion of certain deposition testimony and the rejection of its proposed jury instruction on inherently dangerous activities. Once again, because we cannot know what will transpire on remand, it would be premature for us to act on Plaintiffs' request for rulings on these issues. *See generally City of Las Cruces v. El Paso Elec. Co.*, 1998–NMSC–006, ¶ 18, 124 N.M. 640, 954 P.2d 72 ("We avoid rendering advisory opinions.").

### CONCLUSION

{43} For the foregoing reasons, we conclude that the district court improperly directed a verdict on the existence of an employer-independent contractor relationship in this case. We therefore reverse and remand for further proceedings.

{44} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.