The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **JUNE 15, 2022**

**No. A-1-CA-39144**

**BEATRICE JUAREZ,**

Plaintiff-Appellee,

v.

**THI OF NEW MEXICO AT SUNSET VILLA, LLC, a foreign limited liability company, d/b/a SUNSET VILLA CARE CENTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

Parnall Law Firm, LLC
Una Campbell
Albuquerque, NM

for Appellee

Wilson Elser Moskowitz Edelman & Dicker, LLP
Lori D. Proctor
Houston, TX
Coleman M. Proctor
Dallas, TX

for Appellant

**OPINION**

**MEDINA, Judge.**

**{1}** Defendant THI of New Mexico at Sunset Villa, LLC (Sunset Villa) appeals the district court's denial of Defendant's motion to compel arbitration, pursuant to the New Mexico Uniform Arbitration Act (NMUAA), NMSA 1978, § 44-7A-29(a)(1) (2001). We reverse, and remand.

**BACKGROUND**

**{2}** In July 2018, Plaintiff Beatrice Juarez was admitted to Sunset Villa care facility for rehabilitation following a knee replacement surgery. As a condition of her admission, Plaintiff signed both an "Admission Agreement" and an arbitration agreement titled "Agreement for Dispute Resolution Program" (DRP), which were provided to Plaintiff at the same time, along with other admission materials. Plaintiff alleges that she signed the Admission Agreement and DRP the day after she was admitted to the facility, while Defendant asserts that she was presented with the documents and executed them at the time of admission and that the contracts are dated accordingly.

**{3}** In bold at the beginning of the document, the DRP stated:

> YOUR ADMISSION TO THE FACILITY IS CONTINGENT ON
> YOU AND YOUR REPRESENTATIVE, IF ANY, ENTERING INTO
> THIS AGREEMENT TO PARTICIPATE IN THE DRP. BY
> CHOOSING TO HAVE DISAGREEMENTS RESOLVED

THROUGH THE DRP, YOU WILL BE WAIVING THE RIGHT TO HAVE A JUDGE OR A JURY RESOLVE ANY SUCH DISAGREEMENT IN COURT. INSTEAD, IF THERE IS A DISPUTE BETWEEN US, IT WILL BE RESOLVED THROUGH THE DRP. THIS MEANS THAT, IF ALL ELSE FAILS, OUR DISPUTE WILL BE RESOLVED BY A DECISION BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.

The DRP also stated that all parties "acknowledge that they are agreeing to mutual arbitration, regardless of who makes the claim" so long as it does not fall into the small claims exception; that "[Defendant] will pay for 100% of the fees charged by the mediator and the arbitrators"; and that "[Defendant] will pay up to $5,000 in attorney[] fees that you actually incur if our dispute is arbitrated."

{4} The DRP contained a delegation clause, which stated in part:

> The arbitrator is required to apply and enforce the terms of this [a]greement. To the fullest extent permitted by law, any disagreements regarding the applicability, enforceability or interpretation of this [a]greement will be decided by the arbitrator and not by a judge or jury.

Additionally, the DRP specified "[p]rocedurally, and unless otherwise governed by the [Federal Arbitration Act (FAA)], the arbitration will follow the rules and procedures of the Judicial Arbitration and Mediation Services (JAMS)." Finally, the DRP notified the parties that "[t]his [a]greement relates to matters, among others, that are covered by the Admission Agreement, incorporates the Admission Agreement and should be read together with the Admission Agreement."

2

**{5}** The Admission Agreement stated that "this [a]greement represents the entire agreement and understanding between the parties and supersedes all previous representations, understandings or agreements, oral or written," and that "[t]he undersigned further acknowledges that he/she has received and read the *Admission Handbook* and other Admissions materials and understand[s] that these documents are made a part of this [a]greement by reference herein."

**{6}** Approximately seven months after her admission to Sunset Villa, Plaintiff filed a complaint against Defendant, alleging claims of medical negligence; respondeat superior and vicarious liability; and negligent hiring, training, supervision, and retention of employees. After filing an answer, Defendant moved to compel arbitration, asserting that there was no dispute that Plaintiff signed the DRP, that Defendant was entitled to enforce the DRP, that the DRP was a valid, enforceable agreement supported by consideration, and that the delegation clause clearly required any questions about arbitrability be submitted to the arbitrator.

**{7}** Plaintiff responded that the DRP was substantively unconscionable because it contained provisions that were unfair and against public policy. Plaintiff also argued that the circumstances of signing the agreement made the DRP procedurally unconscionable. Plaintiff attached an affidavit in support, alleging, among other things, that Plaintiff did not read the paperwork, was not asked to review the paperwork, felt as if she had no choice but to sign, and was on medication at the time

3

of signing. Plaintiff stated that "Plaintiff also challenges this 'delegation clause' under the same grounds she challenges the 'Agreement.'"

{8} In reply, Defendant argued that Plaintiff failed to specifically challenge the delegation clause and, therefore, a court is prevented from considering the contract enforcement challenges to the arbitration agreement under New Mexico law. Instead, the challenges are required to be submitted to an arbitrator. Defendant also maintained that Plaintiff failed to establish both procedural and substantive unconscionability.

{9} In May 2020, the district court held a hearing on Defendant's motion to compel arbitration. Plaintiff's counsel reiterated that "the delegation clause in the [DRP] is unenforceable for the same reasons that I have mentioned here, that the [DRP] itself is unenforceable." The district court denied Defendant's motion, citing four grounds for the denial. The district court found that (1) Defendant "failed to present evidence as to the reasonableness of the arbitration provision"; (2) Defendant failed to provide an affidavit to contradict Plaintiff's, although Defendant "referred to and challenged [the affidavit] in argument"; (3) if the DRP was signed before the Admission Agreement, then "it was superseded by the [A]dmission [A]greement"; and (4) if vice versa, "then [there is] no consideration." The district court did not explain its reasoning for rejecting Defendant's argument that the district court was

prevented from considering the unconscionability arguments because of the delegation clause. This appeal followed.

**DISCUSSION**

{10} On appeal, Defendant maintains that the district court erred in considering Plaintiff's contract enforceability arguments because the language of the delegation clause in the DRP requires these questions be submitted to the arbitrator and not the district court. In the alternative, if we were to consider Plaintiff's enforcement arguments, Defendant argues Plaintiff failed to show both substantive and procedural unconscionability. Further, Defendant argues that the district court erred in denying the motion on contract validity grounds because (1) neither party raised these issues below; (2) the DRP is supported by multiple forms of consideration; and (3) the DRP was not superseded by the Admission Agreement, but rather the two documents should be construed together.

{11} We hold that the district court erred in denying the motion to compel arbitration on contract validity grounds because the DRP was supported by alternative consideration, and under the facts of this case, we construe the DRP and Admission Agreement as one instrument. We additionally hold that the language of the delegation clause requires that questions regarding enforceability and unconscionability be submitted to the arbitrator. We therefore do not address Plaintiff's enforcement arguments on appeal.

{12} "Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law." *Hunt v. Rio at Rust Ctr., LLC*, 2021-NMCA-043, ¶ 12, 495 P.3d 634 (internal quotation marks and citation omitted). "Accordingly, we apply New Mexico contract law in the interpretation and construction of the arbitration agreement." *Id.* (alterations, internal quotation marks, and citation omitted). "We review questions of contractual interpretation de novo." *Id.* "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218 (internal quotation marks and citation omitted).

## I.    There Was a Valid Contract to Arbitrate Between the Parties

{13} We begin with the district court's decision to deny Defendant's motion to compel arbitration on contract validity grounds. "A legally enforceable contract is a prerequisite to arbitration under the [NMUAA], and without such a contract, the parties will not be forced to arbitrate." *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 15, 302 P.3d 751 (internal quotation marks and citation omitted). "For such a contract to be legally enforceable, New Mexico courts require evidence of an offer, acceptance, consideration, and mutual assent." *Id.* (alteration, internal quotation marks, and citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Id.* (internal quotation marks and citation omitted).

6

"Furthermore, a promise must be binding. When a promise puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (internal quotation marks and citation omitted).

{14}     Although not raised by the parties, the district court based its denial of the motion to compel arbitration on either (1) Plaintiff's contention that she was already admitted to the facility when she signed the DRP or (2) the district court's interpretation of the Admission Agreement and DRP as distinct contracts such that one superseded the other. Because the district court denied Defendant's motion to compel arbitration on these grounds, we consider the parties' arguments on these issues made for the first time on appeal. *See Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶¶ 16-17, 137 N.M. 57, 107 P.3d 11.

{15}     We turn first to the district court's conclusion that if Plaintiff signed the DRP after she signed the Admission Agreement, the DRP lacked consideration and was therefore an invalid contract. A review of the terms included in the DRP reveal various forms of consideration. The DRP requires Defendant and Plaintiff to bring all claims arising out of Plaintiff's admission to the facility that fall outside of the small claims exception to arbitration. When both parties are mutually bound to arbitration, a mutual obligation exists, and the arbitration agreement is supported by

7

consideration that is not illusory. *See Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 34, 140 N.M. 266, 142 P.3d 34.

**{16}** In addition, the terms of the DRP require Defendant to pay up to $5,000 of Plaintiff's attorney fees when resolving a claim through arbitration and to cover all costs and fees of arbitration. Although Plaintiff argues this is illusory, we disagree. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 ("New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney[] fees." (internal quotation marks and citation omitted)); *see also* NMSA 1978, § 44-7A-22(d) (2001) ("An arbitrator's expenses and fees, together with other expenses, must be paid as provided in the award."); JAMS Comprehensive Arbitration Rules & Procedures, Rule 31(a) (June 1, 2021), https://www.jamsadr.com/rules-comprehensive-arbitration/ ("Each [p]arty shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the [a]rbitration, unless the [p]arties agree on a different allocation of fees and expenses."). Here, Defendant has promised to do something it is not under a legal obligation to do, therefore creating adequate consideration to support the DRP. Consequently, the district court erred in denying Defendant's motion to compel arbitration by determining that the DRP was not supported by consideration.

{17}    Second, to the extent the district court alternatively found that if Plaintiff signed the DRP before she signed the Admission Agreement, the Admission Agreement superseded the DRP, we disagree. While the Admission Agreement does state "this [a]greement represents the entire agreement and understanding between the parties and supersedes all previous representations understandings or agreements, oral or written," the Admission Agreement and the DRP were signed at the same time and therefore one did not supersede the other. We explain.

{18}    Superseding requires two separate agreements, instruments, or contracts between the parties that take place at different times. *See, e.g.*, *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 22, 282 P.3d 758 (stating that nonrenewal letters that included new, different sublease contracts superseded the defendant's right to renew the existing contracts); *Cont'l Life Ins. Co. v. Smith*, 1936-NMSC-074, ¶¶ 2, 22, 41 N.M. 82, 64 P.2d 377 (stating that the "verbal contract was in full force and effect until it was superseded by the written contract" signed two years later); *West v. Wash. Tru Sols., LLC*, 2010-NMCA-001, ¶¶ 2, 18, 147 N.M. 424, 224 P.3d 651 (stating that a previous agreement or representation may be superseded by other representations made later); *see also Supersede*, *Black's Law Dictionary* (11th ed. 2019) ("To annul, make void, or repeal by taking the place of."). But here, we view the DRP and the Admission Agreement as one instrument because they were presented to Plaintiff at the same time, executed at the same time, and involved the

same parties. *Randles v. Hanson*, 2011-NMCA-059, ¶ 24, 150 N.M. 362, 258 P.3d 1154 ("In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together." (alterations, internal quotation marks, and citation omitted)). Although Plaintiff argues that there is no intent to read the Admission Agreement and the DRP together, the Admission Agreement references other admission materials, including the DRP, and the DRP explicitly mentions the Admission Agreement. This provides additional support that the parties intended these two documents to be read together and construed as one instrument. *Master Builders, Inc. v. Cabbell*, 1980-NMCA-178, ¶ 9, 95 N.M. 371, 622 P.2d 276 ("Another situation in which two documents are properly construed together is when one or both documents refer to the other.").

**{19}** Because the Admission Agreement and the DRP are read together, neither document could supersede the other because superseding requires two distinct instruments. *See, e.g.*, *LensCrafters, Inc.*, 2012-NMSC-020, ¶ 22. Therefore, we hold the district court erred in denying Defendant's motion to compel arbitration by determining that the Admission Agreement superseded the DRP.

**II.     Framework to Determine the Scope of an Arbitration Delegation Clause**

10

{20} We next turn to the district court's decision to deny Defendant's motion to compel arbitration on contract enforceability grounds and Defendant's argument that the delegation clause required these arguments be submitted to the arbitrator. "The general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is *clear and unmistakable evidence* that the parties decided otherwise under the terms of their arbitration agreement." *Hunt*, 2021-NMCA-043, ¶ 13 (internal quotation marks and citation omitted); *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("This Court, however, has . . . added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (alterations, internal quotation marks, and citation omitted)). The NMUAA, NMSA 1978, §§ 44-7A-1 to -32 (2001), enforces this position, providing that a court shall order the parties to arbitrate if it finds that there is an enforceable agreement to do so. *See* § 44-7A-8(b).

{21} Even though the parties' agreement is subject to the FAA, we previously explained that "although the FAA has limited the role of courts in the arbitration

11

context, certain gateway issues involving arbitration provisions have remained within the purview of judicial review." *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 124, *aff'd on other grounds*, Nos. 33,011, 33,013, dec. (N.M. Sup. Ct. Aug. 23, 2012) (non-precedential). "These gateway arbitrability issues include matters such as the validity of an arbitration provision, the scope of an arbitration provision, or whether an arbitration agreement covers a particular controversy." *Hunt*, 2021-NMCA-043, ¶ 14 (internal quotation marks and citation omitted). Like the United States Supreme Court, we have recognized that a delegation clause should be upheld when there is "clear and unmistakable" intent to have these gateway questions determined by an arbitrator rather than a court. *Id.*

**{22}** However, even if there is a clear and unmistakable intent to arbitrate, a court may still consider a challenge to the delegation clause in an arbitration agreement under certain circumstances. "[A] party must specifically challenge the delegation provision in order for a court to consider the challenge rather than referring the matter to an arbitrator." *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 11, 288 P.3d 888 (internal quotation marks and citation omitted). "The challenge need not be made in a specific document, such as the complaint; rather, what matters is the substantive basis of the challenge." *Id.* (alteration, internal quotation marks, and citation omitted). "Our inquiry, then, turns on two questions: (1) was there a clear and unmistakable agreement to arbitrate arbitrability? and (2) did [the challenger]

mount a 'specific challenge' to that agreement?" *Id.* With this framework in mind, we now turn to Defendant's argument that the district court erred in determining the merits of Plaintiff's unconscionability arguments instead of submitting the questions to an arbitrator.

**A.     The Delegation Clause Clearly and Unmistakably Delegates Questions of Arbitrability to the Arbitrator**

{23}     Defendant argues that the language of the delegation clause clearly delegates the question of arbitrability. Defendant also argues that the DRP's incorporation of the JAMS rules further shows a clear intent to delegate questions of arbitrability. Plaintiff contends that the delegation clause does not clearly and unmistakably delegate because the delegation clause does not delegate questions of "validity" or "voidness." Plaintiff further argues that the JAMS rules only apply to procedural matters and that incorporating "an entire set of rules, without reference to the particular rule that is meant to govern arbitrability, does not clearly and unmistakably indicate an intent for the arbitrator to decide arbitrability." Defendant replies that there is no authority separating "validity" from "enforcement," and that questions of unconscionability are considered questions of contract enforcement.

{24}     Here, we hold that the plain language of the delegation clause presents clear and unmistakable evidence that the parties intended to have an arbitrator decide the threshold issue of arbitrability. The delegation clause states, "[t]o the fullest extent

13

permitted by law, *any* disagreements regarding the *applicability*, *enforceability* or *interpretation* of this [a]greement will be *decided by the arbitrator and not by a judge or jury*." (Emphases added.) The emphasized language is clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability. *See Felts*, 2011-NMCA-062, ¶ 22 ("Our Supreme Court has stated that courts must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement." (alteration, internal quotation marks, and citation omitted)).

**{25}** In addition, the language of the delegation clause here is similar to language we have previously held showed clear and unmistakable intent to delegate questions of arbitrability. *Compare Clay*, 2012-NMCA-102, ¶ 12 (holding delegation clause language of "disputes about the validity, enforceability, arbitrability or scope" are subject to arbitration "was clear and unmistakable evidence of the parties' intent to 'have an arbitrator decide threshold issues of arbitrability'" (internal quotation marks and citation omitted)), *and Felts*, 2011-NMCA-062, ¶ 23 (holding delegation clause language of "any and all claims, disputes or controversies arising out of [the a]greement to [a]rbitrate [a]ll [d]isputes including disputes as to the matters subject to arbitration" to be clear and unmistakable evidence of intent (citation omitted) (text only)), *with Hunt*, 2021-NMCA-043, ¶ 15 (holding that the delegation clause language that "any disputes regarding the interpretation of [the] agreement shall be

14

submitted to arbitration" was not clear and unmistakable evidence of intent because the agreement failed to specify that "distinct threshold questions of *arbitrability* (i.e. questions about the validity, enforceability, or scope of the arbitration agreement) should also be resolved by an arbitrator" (alterations and internal quotation marks omitted)).

**{26}** Although Plaintiff argues that the inclusion of the JAMS rules in the DRP should not be considered evidence of clear and unmistakable intent, our case law requires the opposite conclusion. The DRP states "[p]rocedurally, and unless otherwise governed by the FAA, the arbitration will follow the rules and procedures of the [JAMS]." JAMS Rule 11 states,

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which [a]rbitration is sought, and who are proper [p]arties to the [a]rbitration, shall be submitted to and ruled on by the [a]rbitrator. The [a]rbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arbitration Rules & Procedures, *supra*, Rule 11(b). Further, Rule 11(c) states, "[d]isputes concerning the appointment of the [a]rbitrator shall be resolved by JAMS." JAMS Comprehensive Arbitration Rules & Procedures, *supra*, Rule 11(c). Incorporation of rules of arbitration that give the arbitrator authority to decide questions of arbitrability is considered clear and unmistakable evidence of intent to delegate questions of arbitrability. *See Felts*, 2011-NMCA-062, ¶ 24.

15

**{27}** To the extent Plaintiff contends that the absence of the words "validity" or "voidable" in the delegation clause invalidates it because unconscionability is a question of contract validity, and the delegation clause does not send issues of validity to the arbitrator, we disagree. In New Mexico, unconscionability is a question of contract enforcement and not a question of validity. *See Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 44, 304 P.3d 409 ("A showing of unconscionability may render an otherwise valid contract voidable, revocable, and unenforceable."); *see also Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶¶ 17-18, 306 P.3d 480 (stating "consideration and unconscionability are two different analyses under contract law," and explaining that "[c]onsideration is a prerequisite to the legal formation of a valid contract" whereas "[u]nconscionability, on the other hand, is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party," and therefore "New Mexico law does not equate adequate consideration with a conscionable contract" (emphasis, internal quotation marks, and citations omitted)). We cannot agree with such a narrow reading of the delegation clause as argued for by Plaintiff to create ambiguity in the intent to submit arbitrability questions to the arbitrator.

**{28}** Because we hold that the delegation clause clearly and unmistakably delegates questions of arbitrability to the arbitrator, we next turn to whether Plaintiff specifically challenged the delegation clause.

**B.     Plaintiff Did Not Specifically Challenge the Delegation Clause**

**{29}** Defendant argues that Plaintiff's challenge to the delegation clause on the same grounds as her challenge to the DRP as a whole is not a specific challenge and that the record does not support Plaintiff's claim that her procedural unconscionability argument was directed specifically to the delegation clause. Plaintiff maintains that the procedural unconscionability argument goes to the circumstances of signing the agreement, which includes the delegation clause, and therefore, the argument specifically challenges the delegation clause. Plaintiff additionally argues that her challenge to the JAMS rules should be considered a specific challenge to the delegation clause.

**{30}** We first addressed the requirement of a specific challenge in *Felts*. In *Felts*, the plaintiff entered into three online loans with various payday lending organizations. 2011-NMCA-062, ¶ 4. The plaintiff signed virtually identical loan agreements that contained a delegation provision stating "any and all claims, disputes or controversies between the borrower and lender shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Form (NAF)." *Id.* ¶¶ 4-5 (alteration and internal quotation

17

marks omitted). The arbitration agreement contained a similar "class action ban" in the body of the agreement. *Id.* ¶ 5. The plaintiff brought a class action complaint against the lending organization, and the named defendant moved to compel arbitration. *Id.* ¶¶ 7-8. The district court denied the motion, finding that it had jurisdiction to decide the validity of the arbitration agreement and that the class action ban was against public policy, making the agreement unenforceable. *Id.* ¶ 9.

{31} A second defendant then also moved to compel arbitration, arguing that the district court lacked jurisdiction and that arbitrability questions must be submitted to an arbitrator. *Id.* ¶ 10. The district court denied the second motion on the same grounds as it denied the first motion to compel arbitration. *Id.* ¶ 11. Both defendants appealed, and the appeals were consolidated before this Court. *Id.* ¶ 12.

{32} This Court clarified that there are two categories of challenges to a delegation provision: "(1) those challenging specifically the validity of the agreement to arbitrate; and (2) those challenging the contract as a whole, either on a ground that directly affects the entire agreement or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* ¶ 19 (citation omitted) (text only). We held that a "district court is precluded from deciding a party's claim of unconscionability unless that claim is based on the alleged unconscionability of the delegation provision itself." *Id.* ¶ 20.

18

**{33}** We agreed with the plaintiff in *Felts* that their argument was a specific challenge to the delegation clause. *See id.* ¶ 30. The plaintiff argued that the delegation clause itself was invalid because it also contained a class action ban, and because the delegation clause was impossible to follow because the NAF had stopped performing consumer arbitration services. *See id.* As such, the "arguments were both clearly directed against the validity of the delegation clause alone, and were distinct from [the plaintiff's] claims against the [l]oan [a]greements [on other grounds]." *Id.* We therefore affirmed the district court in denying the motions to compel arbitration and ruling on the merits of the plaintiff's unconscionability arguments. *See id.* ¶¶ 33, 45.

**{34}** We next addressed a specific challenge to a delegation clause in *Clay*. *Clay* involved a loan agreement signed by the plaintiff using his vehicle as collateral that contained a delegation arbitration clause applying to "any claim, dispute or controversy" between the plaintiff and the defendant "that in any way arises from or relates to [the a]greement" and included "disputes about the validity, enforceability, arbiltrality or scope of [the a]rbitration [p]rovision or [the a]greement." 2012-NMCA-102, ¶¶ 2, 12 (emphasis and internal quotation marks omitted). The plaintiff failed to pay back the loan, and was permanently injured during an altercation when the defendant attempted to repossess the vehicle. *Id.* ¶ 2. The plaintiff brought suit for the injury, and the defendant moved to compel arbitration under the agreement.

19

*Id.* ¶ 3. The district court denied the motion, finding the delegation provision substantively unconscionable. *See id.*

{35}    On appeal, this Court agreed that the plaintiff had specifically challenged the delegation clause. *Id.* ¶ 13. The plaintiff argued that the defendant fraudulently induced the contract by allegedly misrepresenting the neutrality of the two organizations identified to administer the arbitration proceedings, the NAF and the American Arbitration Association, because the organizations had stopped arbitrating collection actions. *Id.* We compared this argument to the argument made in *Felts* because both the delegation clauses were "'rendered impossible because the NAF had ceased its consumer arbitration business.'" *Id.* (omission omitted) (quoting *Felts*, 2011-NMCA-062, ¶ 30). Therefore, like in *Felts*, this argument was a specific challenge to the delegation clause because it went directly to the delegation clause itself. *See id.*

{36}    Here, Plaintiff asks us to interpret her procedural unconscionability argument as only directed to the delegation clause and argues for the first time on appeal that her challenge to the JAMS rules should also be considered a specific challenge to the delegation clause. However, "[w]e will not entertain an argument made for the first time on appeal." *State Farm Mut. Auto. Ins. Co. v. Barker*, 2004-NMCA-105, ¶ 20, 136 N.M. 211, 96 P.3d 336. "Appellate courts review only those matters that

20

were presented to the trial court." *Id.* Therefore, we decline to address Plaintiff's argument regarding the JAMS rules.

{37} In her response to Defendant's motion to compel arbitration, Plaintiff argued that she "also challenges this 'delegation clause' under the same grounds she challenges the '[DRP],'" and during the hearing on the motion, Plaintiff similarly stated "the delegation clause in the [DRP] is unenforceable for the same reasons that I have mentioned here, that the [DRP] itself is unenforceable." Neither of these statements sufficiently challenges the delegation clause.

{38} Plaintiff's statements attack the validity of the delegation clause only so far as the delegation clause is included in the DRP because Plaintiff's procedural unconscionability argument both in the district court and on appeal is directed at the validity of the DRP in its entirety. As such, this argument is "challenging the contract as a whole" and is not "clearly directed against the validity of the delegation clause alone." *Felts*, 2011-NMCA-062, ¶¶ 19, 30 (alteration, internal quotation marks, and citation omitted); *see also Rent-A-Center*, 561 U.S. at 70 (stating that "challenges [to] the contract as a whole" are not "relevant to a court's determination whether the arbitration agreement at issue is enforceable" (alteration, internal quotation marks, and citation omitted)).

{39} Finally, Plaintiff's other substantive unconscionability arguments that (1) the DRP is facially one-sided when read in conjunction with the Admission Agreement

21

and the JAMS rules; (2) the JAMS rules unreasonably favor defendants; and (3) the DRP contains a small claims exception to arbitration are also not specific attacks on the delegation provision. None of these arguments discuss the language or the application and enforcement of the delegation clause, which is required to make a specific challenge. *See Clay*, 2012-NMCA-102, ¶ 13; *Felts*, 2011-NMCA-062, ¶ 30. We therefore hold that Plaintiff did not specifically challenge the delegation clause.

**{40}** Because the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator, and Plaintiff did not specifically challenge the delegation clause, the proper forum for Plaintiff to bring her claims and raise defenses to the DRP is arbitration and not the district court. *See Felts*, 2011-NMCA-062, ¶ 20. "When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement." *Lisanti v. Alamo Title Ins. of Tex.*, 2002-NMSC-032, ¶ 17, 132 N.M. 750, 55 P.3d 962. Therefore, the district court erred in denying Defendant's motion to compel arbitration by reaching Plaintiff's contract enforcement arguments.

**CONCLUSION**

**{41}** We reverse and remand with instructions for the district court to enter an order compelling arbitration.

**{42}** **IT IS SO ORDERED.**

_____

22

                                     **JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**GERALD E. BACA, Judge**